HARRIS *v.* STATE.

In Banc. May 8, 1950.

No. 37497 (46 So. (2d) 194)

184

Frank C. Horton, for appellant.

**George H. Ethridge**, Assistant Attorney General, for appellee.

**McGehee, C. J.**

Upon information furnished to the sheriff and his deputy by a special agent of the railroad company, who was known to them to be a credible person, the said officers went to the passenger station at Grenada to await the arrival of a train on which they had been advised that the defendant, Buster Harris, would arrive with a suitcase of whiskey. The train was due within a few minutes after this information was furnished at the sheriff's office, and there was not therefore sufficient time left within which to obtain a search warrant for the seizure and search of the suitcase when the defendant should alight from the train. However, if evidence is obtained by officers by means of a search of one's premises or personal belongings, the lack of sufficient time to obtain a search warrant is wholly immaterial; then such warrant is required as a condition precedent to a valid search without regard to the provisions of Section 2615, Code of 1942.

As the train came to a stop, these two officers were standing on opposite sides thereof looking for the accused, Buster Harris. Before it came to a complete stop, he got off on the wrong side from the depot (although either side would have been the wrong one for him to get off on under the circumstances) and ran along by the train until it came to a standstill. Thereupon another colored man placed the suitcase on the top step of the train after the trap-door had been raised and the accused caught hold of it as if to set it on the ground. He then saw the deputy sheriff standing nearby, who testified at the trial that then "he turned it loose and backed off". This officer then said to him, "Buster, get your suitcase, the train will leave you", and the deputy says that the accused then "kept backing off from it and I picked the suitcase up and set it down on the ground and says, 'Buster, what have you got in that suitcase?' and he says, 'whiskey' ".

Immediately following the above-mentioned incident, the deputy arrested the accused, carried him to the other side of the train where the sheriff was standing, and the two officers then took him to jail, where he was told by the sheriff to open the suitcase, and the officers there saw for the first time that it did contain about a half a case of bonded whiskey.

It seems to be the theory of the deputy sheriff, when testifying, that he didn't seize the suitcase but that he merely took it off the top step of the train, and set it on the ground to keep the train from carrying it away. And he says that he delivered the suitcase back to the accused after asking him what it contained. However, when he asked this question, and the accused made his reply, the latter was entitled to assume that the officer still had it in charge and under his control after taking it off the train-step and setting it on the ground and before delivering it back to the accused after arresting him to take him to jail.

It is true that he surrendered the suitcase to the accused to carry with him to the jail, where the latter had no particular need for it, but the deputy had taken charge of the accused before the latter again took hold of the suitcase.

And it seems to be the theory of the sheriff that neither he nor his deputy sheriff searched the suitcase at the jail; that on the other hand Buster, the accused, searched it by opening the same when the sheriff told him to do so. The deputy was asked as a witness: "Q. If Buster hadn't opened it, you would have, wouldn't you? A. Well, I would think it would be natural for a man to open it." Moreover, the deputy further testified that they went to the train to get the suitcase and the whiskey, without a search warrant for that purpose, and that "it was my intention to get the whiskey if he unloaded it off that train".

██ The right to make a search for intoxicating liquors on probable cause and without a search warrant is applicable only to the search of an automobile and the other means of transportation mentioned in Section 2615, Code of 1942. Martin v. State, 190 Miss. 898, 2 So. (2d) 143.

If the deputy sheriff took his stand beside the train to get the whiskey if the accused should unload it off the train, as the officer testified he intended to do, and then seized the suitcase and placed it on the ground and then stood over it when asking the accused as to what it contained, he was a trespasser while he had the suitcase in his possession and under his control because of having seized it without a search warrant. Naturally the accused would have told him what was in it when asked the question, since he would necessarily have known that the officer would find out anyway, and that the withholding of the requested information, and lying in regard to the fact inquired about, would have militated against him as to the extent of his punishment if convicted.

Moreover, there is no merit in the contention that the deputy promptly delivered the suitcase back to the accused after setting it on the ground and asking him what it contained. This officer frankly admitted that the reason he asked him what it contained was "because it was so heavy". The officer discovered that it was heavy by having first taken charge of it in removing it from the train-step to the ground. Most assuredly it is not to be contended that the officers did not require the accused to bring it along to the jail himself "because it was so heavy" as they accompanied him there to have him search it for them.

Except for the confession of the accused, made under the circumstances hereinbefore mentioned, the officers had no evidence of the corpus delicti, and the only proof of the corpus delicti aliunde the confession was obtained by the sheriff asking the accused to open his suitcase and to thereby give evidence against himself as to the corpus delicti at a time when the accused was under arrest for a misdemeanor which the officers had not seen committed in their presence and at a time when their possession of his suitcase was wrongful. In other words, the officers still had charge of the suitcase when they arrived at the jail since the accused had carried it there for them.

The case of Walker v. State, 188 Miss. 177, 189 So. 804, has a direct bearing on the point as to the necessity for the officers to actually see a misdemeanor being committed in their presence before they are entitled to arrest without a warrant, and also on the point that a confession alone by the accused is not sufficient to establish that a misdemeanor has been committed in the presence of the officer.

In the Walker case, supra, there was no proof other than the confession of the accused that he had stolen the watermelon from the patch of the owner when the latter found him in possession of a melon and arrested him. The Court held that the arrest was unlawful, since

the entire misdemeanor must be committed in the presence of the officer or private person before the arrest of the accused without a warrant.

In the case of Myers v. State, 158 Miss. 554, 130 So. 741, the Court declared that: "One of the safest tests, although we do not declare it to be under all circumstances an exclusive test, of when a misdemeanor is committed in the presence of an officer, is whether the officer as a witness could at the time of the arrest of his own knowledge testify to sufficient facts as having happened in his presence to make out a case for conviction, if his evidence were undisputed; and, of course, an admission made to him or in his hearing is sufficient to supply knowledge of those facts competent to be covered by an admission. But no admission or confession can wholly supply the corpus delicti; that is to say, there must presently exist, independently of the confession, the essential facts which constitute the corpus delicti."

In other words, there must presently exist, independently of the confession, the essential facts to the knowledge of the person making the arrest which constitute the corpus delicti. Since the first actual knowledge that the defendant had the whiskey in his suitcase was gained by the officers when he was told by the sheriff to open it at the jail, the officer making the arrest could not at the time thereof "of his own knowledge testify to sufficient facts as having happened in his presence to make out a case for conviction, if his evidence were undisputed", for the reason that in order to make out a case for conviction it is necessary to prove the corpus delicti. In the instant case, the officer had no knowledge of his own of the corpus delicti until after he had arrested the accused and carried him to jail; he only had the confession which was insufficient in itself to establish the corpus delicti.

Under all the facts and circumstances, we do not think that the cases of Williamson v. State, 140 Miss. 841, 105

So. 479, and Quan v. State, 185 Miss. 513, 188 So. 568, relied on by the state, are controlling in the instant case. It is true that in the Quan case, supra, it was held that a confession, freely and voluntarily made while one is in custody under an unlawful arrest, is not excluded on account of the illegality of the arrest, but we are unable to agree that under the facts of the present case the accused both freely and voluntarily confessed the crime and consented to the search of his suitcase. Unless he did do so, the fact that he may have told the officer that there was whiskey in it would not have entitled the officer to require him to open it so that he could look at the whiskey, when he had no search warrant authorizing him to do so.

As to the Williamson case, supra, the whiskey was being transported in an automobile, and the confession of the occupants of the car as to what was in the containers therein had the effect of furnishing the officers with probable cause to make the search and seizure. That case was decided subsequent to the enactment of Section 2615, Code of 1942, authorizing the search of an automobile on probable cause without a search warrant, but there is no law that would authorize the search of a person's suitcase without a search warrant, even though such person should alight from a train and see an officer and say to him, ''I have some whiskey in this suitcase''. The same situation would be presented thereby as if a citizen should engage in conversation with a police officer in regard to the prohibition laws as to possession of intoxicating liquor and voluntarily say, ''I keep whiskey in my house most of the time, and I have some there now'', thus affording the officer probable cause for obtaining a search warrant and searching the premises of such citizen, but which confession would not authorize a search thereof without a warrant.

We do not think that any of the decisions cited in the briefs are controlling on the unusual facts of the instant

case, and we are of the opinion that the proof of the defendant's unlawful possession of the whiskey was illegally obtained and was for that reason inadmissible in evidence against him.

Reversed and judgment here for the appellant.